**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re:  CRYSTAL L. STAMOS,<br>  Debtor. | Case No. 23-33828-KRH<br>Chapter 13 |
| CRYSTAL L. STAMOS,<br><br>  Movant,<br><br>v.<br><br>ALLEN SCOTT EGER,<br><br>  Respondent. | <br><br><br><br>Contested Matter |

### ORDER GRANTING MOTION FOR SANCTIONS AND CIVIL CONTEMPT

On May 22, 2024, the Court conducted an evidentiary hearing (the "Hearing") on the *Motion for Sanctions and Civil Contempt* (the "Motion") [ECF No. 20] filed by Crystal L. Stamos (the "Debtor"). By her Motion, the Debtor requested that this Court find Allen Eger (the "Respondent") in civil contempt for violating the automatic stay of section 362 of Title 11 of the United States Code (the "Bankruptcy Code") and impose sanctions upon the Respondent. The Respondent, pro se, and the Debtor, by counsel, appeared at the Hearing and offered evidence in support of their positions. Based on the evidence presented by the parties at the Hearing, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

The Court has subject matter jurisdiction over this contested matter under 28 U.S.C. §§ 157 and 1334(b) and the General Order of Reference from the United States District Court for the

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is appropriate pursuant to 28 U.S.C. § 1409(a).

The Debtor is the Respondent's aunt. At some point prior to the Debtor's bankruptcy filing, the Respondent lived with the Debtor. After the Respondent moved out of the Debtor's house, the Debtor refused to turn over the Respondent's automotive toolbox, which the Respondent needed for his profession as an automotive mechanic. In August 2023, the Respondent filed a Warrant in Debt in the Chesterfield County General District Court (the "State Court"), seeking a judgment for the value of the toolbox. In September 2023, the State Court conducted a hearing on the Warrant in Debt. The Respondent testified that the State Court suggested the Debtor return the toolbox to the Respondent prior to trial to resolve the dispute between the parties. The Respondent further testified that the Debtor instead sold the toolbox.[2] As a result, on November 2, 2023, the State Court entered judgment in favor of the Respondent and against the Debtor in the principal amount of $20,000, along with $64.48 in costs and 6% post-judgment interest (the foregoing, the "State Court Judgment").

The next day, on November 3, 2023, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case. The Debtor listed the Respondent as a creditor. Three days later, on November 6, 2023, the Respondent, pro se, filed a change of address with this Court in the Debtor's bankruptcy case.

On December 7, 2023, the Chapter 13 trustee conducted the section 341 meeting of creditors in the Debtor's bankruptcy case. The Respondent appeared at and participated in the meeting of creditors. On either December 6 or December 7, 2023, the Respondent filed a Writ of

---

[2] No evidence was offered as to the details of such sale.

Fieri Facias (the "Writ") in the State Court, seeking to execute and collect upon the State Court Judgment.

On December 22, 2023, Deputy Juan Romero (the "Deputy") of the Chesterfield County Sheriff's Office attempted to execute the Writ on the Debtor at her residence. The Debtor contacted her bankruptcy attorney's office. Mandy Mansfield (the "Paralegal"), a paralegal working for the Debtor's counsel, informed the Deputy that the Debtor was in an active bankruptcy case, and, by operation of law, the automatic stay prevented execution of the Writ. The Deputy left the residence and requested the Paralegal provide him a copy of the Debtor's bankruptcy filing. The Paralegal testified that she attempted to email the Deputy a copy of the notice of commencement of case, but that the email did not successfully transmit. The Paralegal testified that she resent the notice to a corrected email address between Christmas and New Year's Day and believed it was delivered to the Deputy.

On January 3, 2024, the Deputy returned to the Debtor's home to again execute upon the Writ. The Debtor was at work at the time; the Debtor's daughter answered the door and was able to reach the Debtor by phone. Again, the Debtor contacted the Paralegal, who, in turn, was able to provide the Deputy with sufficient information about the Debtor's bankruptcy case to cease further collection efforts. The Paralegal then contacted the Respondent, informed him that his actions constituted a violation of the automatic stay and requested that the Respondent withdraw the Writ. As of the date of the Hearing, the Writ remained active and outstanding.

After the Paralegal spoke to the Respondent, on January 6, 2024, the Respondent filed a proof of claim in the Debtor's bankruptcy case, asserting an unsecured claim in the amount of $20,000 (the "Claim"). The Respondent took no further actions to collect upon the State Court Judgment.

3

The Debtor and her husband each testified as to the toll that the Deputy's visits had taken upon the Debtor. The Debtor stated she had experienced stress, making it difficult for her to cook and care for her children, reducing her appetite, and causing nausea. The Debtor testified that she did not work for a period of time between Christmas and New Year's Day, although no evidence was provided concerning lost wages or other resulting damages. The Debtor further testified that she left work on January 3, 2024, but again, no evidence of damages was presented. The Debtor testified that on or about January 5 or 6, 2024, the Debtor sought and received medical treatment for stomach ulcers that she claimed were caused solely by the Respondent's actions. The Debtor failed to provide any records concerning her medical condition. No evidence was provided concerning any medical costs. The Debtor testified that her ulcers responded well to medication after two weeks but that she continues to take such medication. The Debtor did not offer any further evidence concerning her medical condition.

Section 362 of the Bankruptcy Code prohibits, inter alia, "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. § 362(a)(2). "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). "Willful conduct refers to deliberateness of conduct and knowledge of bankruptcy filing, not to specific intent to violate court order." *Scott v. Wells Fargo Home Mortg., Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) (citing *In re Aponte*, 82 BR 738, (Bankr. E.D. Pa. 1988)); *see also In re Seaton*, 462 B.R. 582, 593 (Bankr. E.D. Va. 2011) ("[T]o constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay."

(quoting *Citizens Bank v. Strumpf* (*In re Strumpf*), 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 16 (1995))).

The Respondent knew of the Debtor's bankruptcy case, as evidenced by his change of address form filed with the Court, his participation at the meeting of creditors, and his admissions in his testimony. The Court finds the Respondent's testimony credible that he did not understand that the automatic stay applied to prohibit collection activities. However, the Respondent's intentions are immaterial in determining whether the Respondent violated the automatic stay. Because the Respondent was aware of the pendency of the Debtor's bankruptcy case and filed the Writ, the Respondent willfully violated the automatic stay under section 362(k).[3]

Having determined that the Respondent willfully violated the automatic stay, the Court turns to the issue of damages. "An award of damages for a willful violation of the automatic stay must be founded on concrete, non-speculative evidence . . . . The debtor has the burden to establish by a preponderance of the evidence that he suffered actual damages as a result of the stay violation." *In re Seaton*, 462 B.R. at 595. In this case, the Debtor failed to provide any evidence of actual damages. The Debtor did not provide any evidence of medical records or bills, time lost from work, or attorney's fees incurred. Rather, the only evidence presented to the Court was the testimony of the Debtor and her husband concerning the Debtor's pain and suffering. The Court assesses the damages associated with the Debtor's pain and suffering to be $500.

"Though defendant's claimed innocent state of mind does not [a]ffect the award of compensatory damages, it could with the determination of whether to award punitive damages." *Wills v. Heritage Bank* (*In re Wills*), 226 B.R. 369, 376 (Bankr. E.D. Va. 1998). "Generally, courts

---

[3] The Court finds that the Respondent ceased further collection activities after being contacted by the Paralegal. While the Respondent did not move the withdraw the Writ of Fieri Facias, the Court declines to find such action to be a continuing violation of the automatic stay. *Cf. City of Chi. v. Fulton*, 141 S. Ct. 585, 589 (2021).

5

are afforded much discretion in setting exemplary or punitive damages for a willful violation of the automatic stay." *In re Banks*, 577 B.R. 659, 669 (Bankr. E.D. Va. 2017). Relevant factors considered by courts may include the nature of the creditor's conduct, the degree of contempt shown for adherence to the law, the nature and extent of harm to the debtor, and the creditor's ability to pay. *In re Wills*, 226 B.R. at 376 n.8. From the evidence presented, the Court finds that Respondent did not intend to violate the automatic stay and, upon learning that his actions were improper, the Respondent immediately ceased further collection activities. In light of the foregoing, the Court declines to award punitive damages. For the reasons stated herein, it is

**ORDERED** that Allen Eger is found in civil contempt for violating the automatic stay; and it is further

**ORDERED** that as a sanction for the Respondent's contemptible conduct, the Respondent's claim is hereby allowed as a general unsecured claim in the reduced amount of $19,500. The Clerk of Court shall modify the Claim Register to reflect the foregoing; and it is further

**ORDERED** that the Respondent shall promptly withdraw the Writ of Fieri Facias filed in the State Court.

Dated:  May 28, 2024

/s/ Kevin R. Huennekens
United States Bankruptcy Judge

Entered on Docket: May 28 2024

**Copies to:**

**Crystal L. Stamos**
12811 Captain Drive
Chester, VA 23836

6

**Jason Meyer Krumbein**
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 201
Richmond, VA 23230

**Pia J. North**
North Law
5913 Harbour Park Drive
Midlothian, VA 23112

**Allen Scott Eger**
20404 Hickory Circle
South Chesterfield, VA 23803